# Matter of N-M-, Respondent

*Decided June 9, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Opposition to state corruption may, in some circumstances, constitute the expression of political opinion or give a persecutor a reason to impute such an opinion to an alien.

(2)  For claims arising under the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302, a showing of retaliation for opposing governmental corruption is, by itself, insufficient to establish eligibility for relief; instead, an alien must persuade the trier of fact that his or her actual or imputed anticorruption belief (or other protected trait) was one central reason for the harm.

(3)  In making the nexus determination, an Immigration Judge should consider:  (1) whether and to what extent the alien engaged in activities that could be perceived as expressions of anticorruption beliefs; (2) any direct or circumstantial evidence that the persecutor was motivated by the alien's actual or perceived anticorruption beliefs; and (3) any evidence regarding the pervasiveness of corruption within the governing regime.

FOR RESPONDENT:  Hugo F. Larios, Esquire, Tempe, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Erica L. Seger, Assistant Chief Counsel

BEFORE:  Board Panel:  FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

In this case we address an asylum claim founded on opposition to official corruption (or "whistleblowing") in the context of the "at least one central reason" nexus standard set forth in section 208(b)(1)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(i) (2006).

In a decision dated July 7, 2009, an Immigration Judge granted the respondent's applications for asylum and withholding of removal pursuant to sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3) (2006), and 8 C.F.R. §§ 1208.13 and 1208.16 (2009). The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge.

We review an Immigration Judge's findings of fact, including credibility findings, to determine whether they are "clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i) (2011). We review de novo all questions of law, discretion, and judgment and any other issues in appeals from decisions of Immigration Judges. 8 C.F.R. § 1003.1(d)(3)(ii). Because the respondent filed her application after May 11, 2005, it is governed by the provisions of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302 ("REAL ID Act"). *See Matter of S-B-*, 24 I&N Dec. 42, 45 (BIA 2006).

We concur with the Immigration Judge's determination that the respondent demonstrated extraordinary circumstances sufficient to excuse the untimely filing of her asylum application. *See* sections 208(a)(2)(B), (D) of the Act; 8 C.F.R. § 1208.4(a)(5)(i) (2011). To the extent that the DHS challenges the respondent's credibility on appeal, we find no clear error in the Immigration Judge's credibility finding. 8 C.F.R. § 1003.1(d)(3)(i). However, we are unconvinced that the respondent has met her burden of proving that her political opinion, or any other ground specified in the definition of a "refugee," is "one central reason" for the harm she experienced or the harm she fears. Sections 101(a)(42), 208(b)(1)(B)(i) of the Act, 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i) (2006).

The Immigration Judge found that from 1991 to 2004, the respondent worked in a variety of administrative positions at a state-run agency in Colombia that provides medical services. From 1998 to 2004, the agency began replacing state employees with private contractors as part of a privatization effort. During this period, the respondent was pressured to hire certain contractors outside the official approval process and to falsify statistical information, which she refused to do. In retaliation, she was overworked and forced to transfer to another division. The respondent also asserts, although the Immigration Judge did not make findings in this regard, that her superiors auctioned off medical appointments and pressured her to join a particular political party, which she declined to do.

The Immigration Judge observed that after the respondent transferred divisions, she continued to resist corruption within her agency by voicing concerns regarding improperly vetted contracts, refusing to certify payment for work that was unfinished, and speaking out against building a costly filing system. The DHS argues that the record also shows that the respondent reported her concerns on several occasions to the internal audit department at her agency and that, in all instances, this department honored her concerns by not accepting the contracts that she opposed. The Immigration Judge did not address this aspect of the record.

The Immigration Judge found that from December 2003 to May 2004, the respondent received threatening phone calls from anonymous callers, which escalated in frequency and severity. The callers threatened to kill her and her son if she did not leave the country and warned her not to report the calls to the

police.  In response to these threats, she and her son left for the United States in June 2004.  When her son returned to Colombia in July 2004, he was contacted by individuals who threatened to kill him and the respondent if she returned to Colombia.  She resigned from her position at the agency in September 2004 and has had no problems since.

The respondent argues that her resistance to corruption within her agency constituted the expression of a political opinion and that she was persecuted on account of this resistance.  She relies on precedent of the United States Court of Appeals for the Ninth Circuit holding that whistleblowing against government officials "may constitute political activity sufficient to form the basis of persecution on account of political opinion," even absent an espoused political theory, so long as the alien's actions are "directed toward a governing institution" and not just "individuals whose conduct is aberrational."  *Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000).

We agree that, in some circumstances, opposition to state corruption may provide evidence of an alien's political opinion or give a persecutor reason to impute such beliefs to an alien.  *See Zhang v. Gonzales*, 426 F.3d 540, 547 (2d Cir. 2005) (rejecting "any categorical distinction between opposition to extortion and corruption and other disputes with government policy or practice"); *Black's Law Dictionary* 1196 (8th ed. 2004) (defining "political" as "[p]ertaining to politics; of or relating to the conduct of government").  Campaigning against state corruption through classic political activities such as founding or being active in a political party that opposes state corruption, attending or speaking in political rallies on the issue of eradicating state corruption, or writing or distributing political materials criticizing state corruption would likely constitute the expression of political opinion or may lead a persecutor to impute such an opinion to an alien.  *See Musabelliu v. Gonzales*, 442 F.3d 991, 995 (7th Cir. 2006) (stating that "[s]omeone who campaigns against the government and urges the voters to throw the rascals out is engaged in political speech," as is "someone who writes an op-ed piece of otherwise urges the people to rid themselves of corrupt officials").  It is also possible that exposing or threatening to expose government corruption to higher government authorities, the media, or nongovernmental watchdog organizations could constitute the expression of a political opinion.[1]

_____

[1]  An alien may, of course, be motivated to engage in whistleblowing activities for nonpolitical reasons, that is, reasons other than a genuine concern for the practices of good government.  For example, an employee may resist a supervisor's orders to participate in corrupt activities out of fear of being apprehended and punished for doing something illegal.  *See Marku v. Ashcroft*, 380 F.3d 982, 987 (6th Cir. 2004) (finding no political opinion where the alien testified that she refused to doctor balance sheets because she was afraid of going to jail).  An individual may resist extortion by state actors because he does

(continued...)

Here, the Immigration Judge appears to have found that the respondent's actions against corrupt government officials—her refusals to falsify statistical information and certify payment for incomplete work, outspokenness against rebuilding a costly filing system, and opposition to awarding contracts that she deemed improperly vetted—were evidence that she held a political opinion.[2] Even assuming that the respondent held a political opinion (or that her persecutors imputed a political opinion to her), however, we are not satisfied that the respondent has demonstrated that this opinion was "one central reason" that she experienced threatening phone calls. Section 208(b)(1)(B)(i) of the Act.

The United States Supreme Court has held that to satisfy the nexus requirement for asylum and withholding of removal, it is not sufficient that the persecutor act from "a generalized 'political' motive." *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). Instead, an alien must demonstrate that the persecutor harmed or may harm him "because of" the alien's political opinion or other protected trait. *Id.* at 483. In *Elias-Zacarias*, the Supreme Court held that an alien who resisted recruitment attempts by guerrilla forces in Guatemala had failed to demonstrate that the guerrillas would persecute him because of his political opinion, rather than because of his refusal to fight with them. *Id.* Thus, simply demonstrating resistance to pressure to engage in certain acts and consequent retaliation for this resistance is insufficient to establish a nexus. Rather, an alien must provide some evidence, direct or circumstantial, that the persecutor's motive to persecute arises from the alien's political belief. *Id.*

In so holding, the majority did not adopt the dissent's argument that because a persecutor is more concerned with suppressing a victim's actions than with the victim's subjective reasons for engaging in such acts, an inquiry into an individual persecutor's motivation is unnecessary so long as an alien demonstrates that the persecution occurred in response to an act manifesting

---

(...continued)

not wish to part with his money. *See Zhang v. Gonzales*, 426 F.3d at 548 (recognizing that where an asylum applicant opposes government extortion, he will often stand to gain financially from the challenge). An employee may also be motivated by personal revenge or animus when exposing the actions of a corrupt supervisor. Whistleblowing activities based on these latter motives would not, subjectively, constitute the expression of a political opinion, although such activities may still form a basis for a persecutor to impute a political opinion to an alien.

[2] The Immigration Judge made no explicit finding regarding the respondent's subjective reasons for engaging in these activities. However, because an alien's motivations for engaging in activities "are relevant only to the extent that they illuminate the motives of the alleged persecutors," *Adhiyappa v. INS*, 58 F.3d 261, 267 (6th Cir. 1995), we need not remand on this basis alone.

a political opinion. *Compare id.* at 481 n.1 (noting that to be eligible for relief, an alien must show both that his "form of expressive conduct . . . constituted the statement of a 'political opinion'" and that "the guerrillas would persecute him *because of* that political opinion," *with id.* at 489 (Stevens, J., dissenting) (arguing that "[p]ersecution because of [an] overt manifestation [of a political opinion] is persecution because of a political opinion" (quoting *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1287 (9th Cir. 1985)) (internal quotation marks omitted)).

Although an alien must provide some evidence that an alleged persecutor is motivated by a victim's protected trait, we have recognized that "[p]ersecutors may have differing motives for engaging in acts of persecution" and have not foreclosed relief where an alien demonstrates more than one plausible motive for the harm imposed or the harm feared. *See, e.g.*, *Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996). Prior to 2005, courts of appeals applied different standards in assessing eligibility for relief in these mixed motive cases. *Compare Ambartsoumian v. Ashcroft*, 388 F.3d 85, 91 (3d Cir. 2004) (holding that an alien failed to show persecution on account of ethnicity where police harassment occurred "mainly" because he had not obtained proper legal documents), *with Borja v. INS*, 175 F.3d 732, 736-37 (9th Cir. 1999) (holding that guerrillas' threats and mistreatment were motivated "at least in part" by the alien's progovernment stance).

In particular, the Ninth Circuit held that the term "on account of" required only that an alien "produce evidence from which it is reasonable to believe that the harm was motivated, *at least in part*, by an actual or implied [sic] protected ground."[3] *Borja v. INS*, 175 F.3d at 736 (emphasis added) (quoting *Matter of T-M-B-*, 21 I&N Dec. 775, 777 (BIA 1997)) (internal quotation mark omitted). The "at least in part" standard allowed for a showing of nexus even where other, nonprotected reasons "appeared to have been the dominant cause of the persecutory action." *Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009).

---

[3] In *Borja*, the alien was approached by members of a guerrilla group who asked her to join them, and she refused, stating that she was "pro-government." *Borja v. INS*, 175 F.3d at 734. She then paid them a "revolutionary tax" and continued to pay them on a monthly basis until they doubled the amount demanded. *Id.* at 734-35. When she refused to pay the higher amount, the guerrillas beat her, put a gun to her head, and cut her with a knife. *Id.* at 735. Noting that the guerrillas left her unharmed so long as she continued to comply with their extortionate demands, we concluded that the guerrillas had no interest in the alien beyond her ability to pay them and that she had failed to demonstrate persecution on account of her political opinion. *See Matter of T-M-B-*, 21 I&N Dec. 775, 778-79 (BIA 1997). Reversing the Board, the Ninth Circuit held that the alien's initial articulation of her progovernment stance compelled the conclusion that the guerrillas' subsequent threats and mistreatment were motivated at least in part by her political opinion. *Borja v. INS*, 175 F.3d at 735-36.

Congress passed the REAL ID Act of 2005, in part, to create a uniform standard for adjudicating cases in which the alleged persecutor had more than one plausible motive for harming the victim. *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 212 (BIA 2007). Specifically, Congress was concerned that the Ninth Circuit's decisions in *Borja* and its companion case *Briones v. INS*, 175 F.3d 727 (9th Cir. 1999), "undermined a proper analysis of mixed motive cases." H.R. Rep. 109-72, at 163 (2005) (Conf. Rep.), *reprinted in* 2005 U.S.C.C.A.N. 240, 289, 2005 WL 1848528. Since the passage of the REAL ID Act, an asylum applicant must demonstrate that his or her political opinion (or other protected trait) was or will be "at least one central reason" for the persecution. Section 208(b)(1)(B)(i) of the Act. The Ninth Circuit has acknowledged that the REAL ID Act's "one central reason" standard "places a more onerous burden on the asylum applicant than the 'at least in part' standard [the Ninth Circuit] previously applied." *Parussimova v. Mukasey*, 555 F.3d at 740. In cases arising under the REAL ID Act, the "protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment." *Matter of J-B-N- & S-M-*, 24 I&N Dec. at 214. Instead, an alien must demonstrate that the persecutor would not have harmed the applicant if the protected trait did not exist. *Parussimova v. Mukasey*, 555 F.3d at 741.

In a line of pre-REAL ID Act cases, the Ninth Circuit held that official retaliation against those who expose governmental corruption constitutes persecution on account of political opinion when the alleged corruption is intertwined with the operation of government. *See, e.g.*, *Fedunyak v. Gonzales*, 477 F.3d 1126, 1129-30 (9th Cir. 2007); *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1134-35 (9th Cir. 2004); *Grava v. INS*, 205 F.3d at 1181. In some of these cases, the Ninth Circuit appears to have held that a demonstration of retaliation for acting against governmental corruption is sufficient to establish that the harm occurred on account of the alien's political opinion. *See, e.g.*, *Fedunyak v. Gonzales*, 477 F.3d at 1129 (stating that the "death threats and beating that Fedunyak received as a result of his complaints [against extortion] establish the requisite nexus between his political opposition to government corruption and the retaliatory persecution that he suffered"); *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005) (stating that "a victim who is targeted for exposing government corruption is persecuted 'on account of' political opinion" because "[r]etaliation for investigating or publicizing corruption by political figures is by its very nature a political act").

An automatic equation between retaliatory harm and the motivation behind the retaliation, however, would seem inconsistent with the "one central reason" test and with the Supreme Court's requirement in *Elias-Zacarias* that the alien demonstrate that a persecutor is motivated by a victim's protected trait. For example, such an automatic equation would fail to recognize corrupt officials

531

who act solely out of personal revenge or a desire to avoid the exposure of a lucrative scheme of corruption, without a significant concern about the alien's political beliefs, perceived or otherwise. *See Matter of C-T-L-*, 25 I&N Dec. 341, 349 (BIA 2010) (holding that the alien had not established a nexus where police officers threatened him, not because of a protected ground, but because "he had interfered with their private money-making scheme"); *see also Zhang v. Gonzales*, 426 F.3d at 548 (recognizing that corrupt officials may well be motivated "by a pecuniary desire to shield their activities from detection"). While the Ninth Circuit has acknowledged that "[p]urely personal retribution is . . . not persecution on account of political opinion," it has nonetheless found a nexus in whistleblower cases so long as the retaliation was not "completely untethered to a governmental system." *Grava v. INS*, 205 F.3d at 1181 n.3; *see also Fedunyak v. Gonzales*, 477 F.3d at 1130 (citing to the Ninth Circuit's pre-REAL ID "at least in part" standard); *Sagaydak v. Gonzales*, 405 F.3d at 1043; *Mamouzian v. Ashcroft*, 390 F.3d at 1134.

Since the passage of the REAL ID Act, a showing of retaliatory harm for exposing acts of corruption, coupled with evidence that the corruption is in some way linked to a political system, would appear insufficient to demonstrate that a victim's anticorruption beliefs are "one central reason" for retaliation against him. Instead, an alien must persuade the trier of fact not just that the alleged persecutor was motivated in some measure by the alien's actual or imputed political belief, but that the protected trait was "one central reason" for the persecution. A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by us for clear error. *Matter of J-B-N- & S-M-*, 24 I&N Dec. at 214; 8 C.F.R. § 1003.1(d)(3)(i). In making this factual determination regarding a persecutor's motive, an Immigration Judge may find it useful to consider the following factors.

First, an Immigration Judge may consider whether and to what extent the alien engaged in activities that could be perceived as expressions of anticorruption beliefs. For example, an Immigration Judge may consider whether an alien denounced corruption in public or at work, published articles criticizing governmental corruption, or organized fellow victims of government extortion against this behavior. *Cf. Marku v. Ashcroft*, 380 F.3d at 987-89 (finding no nexus where the alien never expressed anticorruption beliefs to the alleged persecutor and it was unlikely that the persecutor would have ascribed such beliefs to the alien).

Next, an Immigration Judge should consider any direct or circumstantial evidence that the alleged persecutor was motivated by the alien's perceived or actual anticorruption beliefs. *INS v. Elias-Zacarias*, 502 U.S. at 843. This could include statements indicating that the persecutor viewed the alien as a political threat or subversive and was motivated as such. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1025 (9th Cir. 2010) (finding a nexus where, while the alien was being beaten in detention, an official accused him

of "defaming" and "raising his head" against the Deputy of the National Assembly); *Hasan v. Ashcroft*, 380 F.3d 1114, 1121 (9th Cir. 2004) (finding a nexus where a government poster publicizing the need to punish the alien mentioned her role as a journalist, a member of a women's organization, and a leader of "anti-Islamist activities"); *Njuguna v. Ashcroft*, 374 F.3d 765, 772 (9th Cir. 2004) (finding a nexus where the alleged persecutor accused the alien of being involved in a plot to defame and humiliate the Kenyan Government).

An Immigration Judge should also consider evidence regarding the pervasiveness of government corruption, as well as whether there are direct ties between the corrupt elements and higher level officials. Where the alien threatens to expose the corrupt acts of rogue officials acting without the support of the governing regime, it seems less likely that the act would be perceived as politically motivated or politically threatening. However, if corruption is entrenched in the ruling party, a challenge to the corrupt practices of this party may be more likely to represent a challenge to the political position of the ruling party, and not just the financial standing or reputation of a small group of corrupt officials. *See Castro v. Holder*, 597 F.3d 93, 104 (2d Cir. 2010) (stating that evidence of pervasive corruption, including direct ties between corrupt elements and the president of Guatemala, made it likely that the alien's whistleblowing actions would be perceived to reflect political opposition to the governing regime); *Desir v. Ilchert*, 840 F.2d 723, 724-25, 727 (9th Cir. 1988) (stating that evidence that the Macoutes political system was a "kleptocracy" founded on extortion made it likely that refusal to accede to extortion would be seen as politically subversive, particularly where the alien presented evidence that he regularly met in small groups to discuss his opposition to these practices). Whether the governing regime, and not just the corrupt individuals, retaliates against an alien for expressing anticorruption beliefs is relevant to this inquiry. *See Baghdasaryan v. Holder*, 592 F.3d at 1026 (noting that, in response to publicizing an extortion scheme, the alien was mistreated by a variety of governmental officials acting under color of law, including the militia, National Security forces, and the tax authority); *Fedunyak v. Gonzales*, 477 F.3d at 1128-29 (noting that when the alien reported extortion by low-level officials to the mayor and Supreme Soviet Deputy, these higher authorities threatened the alien rather than investigating the corruption).

Here, the Immigration Judge found that the threatening telephone calls the respondent received "were made on account of her actions against corruption in [her agency]," such as refusing to falsify statistical information and certify payment for incomplete work. He further found that those threatening the respondent did so "because of her whistle-blowing actions against corruption." These findings are not clearly erroneous, although we acknowledge the DHS's concerns regarding the lack of evidence showing the identity of the callers. 8 C.F.R. § 1003.1(d)(3)(i).

However, simply because the calls were triggered by the respondent's actions, which obstructed the corrupt officials' operations and threatened to expose them, does not necessarily mean that the callers were motivated by the respondent's political opinion or that they viewed her as a political opponent when they retaliated against her. An event (such as an alien's refusal to join the guerrillas' armed forces) may trigger harm (such as kidnaping and conscription), but a central reason for the persecutor's infliction of the harm may or may not be the persecutor's perception of the victim's political opinion. *See Elias-Zacarias v. INS*, 502 U.S. at 483 (holding that the alien did not meet his burden of demonstrating that threats by guerrillas in response to his refusal to join them was motivated by a political opinion rather than because of a desire to increase their ranks). Here, the respondent's refusal to further her superiors' corrupt activities triggered retaliation by these corrupt individuals in the form of threats. However, the Immigration Judge does not appear to have made a finding regarding the callers' motive for threatening the respondent, that is, whether the callers perceived the respondent to pose a political threat or merely a challenge to their personal scheme. Accordingly, we will remand to the Immigration Judge for additional fact-finding in this regard.

Finally, we conclude that the respondent has raised a claim under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent did not explicitly indicate a desire to apply for protection under the Convention Against Torture by checking the related box on her Form I-589 (Application for Asylum and Withholding of Removal) or by clearly requesting to be considered for such relief before the Immigration Judge. However, because she declared that she fears torture upon return to Colombia in Question 4 of her Form I-589 and presented some evidence to support that claim at her hearing, we conclude that she has raised a claim for protection under the Convention Against Torture. *See* 8 C.F.R. § 1208.13(c)(1); *see also Nuru v. Gonzales*, 404 F.3d 1207, 1223 n.13 (9th Cir. 2005). Accordingly, on remand, the Immigration Judge should consider her eligibility for such protection.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER**: The record is remanded to the Immigration Judge for proceedings consistent with the foregoing opinion and for the entry of a new decision.