**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1614

_____

JENCY DAMARIS LOPEZ–CRUZ,
                                          Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206-685-950)
Immigration Judge: Steven A. Morley
_____

Argued October 31, 2018
_____

Before:  CHAGARES and JORDAN,* *Circuit Judges*

(Filed: March 28, 2019)

Alex G. Isbell [**Argued**]
Matthew J. Hartnett
Solow, Isbell, & Palladino LLC

_____

  * The Honorable Thomas I. Vanaskie retired from the Court on January 1, 2019 after the argument and conference in this case, but before the filing of the opinion.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

1601 Walnut St., Suite 1200
Philadelphia, PA 19102
        *Counsel for Petitioner*

Gregory A. Pennington, Jr.
Benjamin Zeitlin [**Argued**]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION[**]

_____

PER CURIAM

Petitioner Jency Lopez–Cruz challenges an order of the Board of Immigration

Appeals denying her petition for asylum. Because the Board did not err in finding that

Lopez–Cruz failed to establish a sufficient nexus between her protected social group and

the alleged persecution, we will deny the petition for review.[1]

I.

Lopez–Cruz, a native and citizen of Honduras, arrived in the United States as an

unaccompanied minor in 2014, without being admitted or paroled. She received a

Notice to Appear on March 31, 2014, charging her as removable pursuant to

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Also before us are Respondent's unopposed motion to supplement the record and Respondent's motion to supplement its brief. We will grant both motions.

2

§ 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Lopez–Cruz conceded that she was removable as charged. She applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), citing incidents in which she was harassed and threatened by three men: two neighbors, who are brothers, and the ex-partner of her sister. (A.R. 330–46). In particular, Lopez–Cruz asserted that she was persecuted because of her status as a "young female head of household." [2] (A.R. 99).

The Immigration Judge ("IJ") found that Lopez–Cruz was entitled to asylum based on her status as a "young female head of household." (A.R. 92–105). He considered that, although the incidents described by Lopez–Cruz did not amount to past persecution, they were indicators of Lopez–Cruz's credible fear of future persecution. In particular, the IJ found that there was a clear nexus between Lopez–Cruz's status as a young female head of household and the harm she would suffer if she were forced to return to Honduras. In making this finding, the IJ pointed to evidence that Lopez–Cruz's father abandoned her family at a young age and that she cares for her ailing mother and her two younger nephews. (A.R. 93–94). He also found that Lopez–Cruz's neighbor, who regularly assaulted and threatened her, told her: "You look like your

_____

[2] Lopez–Cruz also asserted that she was persecuted because of her religion as a Seventh Day Adventist. The IJ denied this claim, finding that the only incident that could be perceived as motivated by her religion—that one man commented on her loose-fitting clothing—was motivated not by her religion but by her physical appearance. The IJ found that, to the extent any future persecution was motivated by Lopez–Cruz's religion, such a motivation was incidental and not a central reason for the persecution. Lopez–Cruz did not challenge this finding before the BIA and the issue is not before us on appeal.

3

sister.  You will take your sister's place[,]" and that Lopez–Cruz took this to mean that she would be possessed by the man because her sister—who had been the man's partner—had left him.  (A.R. 95).  The IJ also noted evidence presented by Lopez–Cruz that female heads of household are a "vulnerable population" as defined by the Honduran government and, according to country reports, are frequently victims of violence.  (A.R. 103).[3]  Having found Lopez–Cruz eligible for asylum, the IJ did not reach Lopez–Cruz's applications for withholding of removal and protection under the CAT.

The Government appealed, and the Board of Immigration Appeals vacated the IJ's grant of asylum.  The Board found that the IJ clearly erred in finding that Lopez–Cruz's membership in the social group of "single female heads of household" was one central reason why she would be targeted for harm.[4]  (A.R. 3).  The Board reasoned:

> [Lopez–Cruz] contends that the absence of a male figure in the household provides motivation.  However, this argument demonstrates that those at risk are not necessarily the head of the household.  In other words, the fact that the respondent was the victim of her assailants' criminal conduct does not necessarily establish a nexus between the harm and a protected

---

[3] Lopez–Cruz also said that one of the men told her that he would "make her the woman of the house," in reference to his plans to rape her.  (A.R. 220).

[4] The Board did not address whether "young female heads of household" qualify as a cognizable particular social group.  We have been critical of the Board jumping to the nexus requirement to resolve disputes.  *See, e.g.*, *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 219 n.5 (3d Cir. 2017) ("In a number of recent cases, the [Board] likewise has assumed a cognizable [particular social group] or imputed political opinion and disposed of the appeal by finding no nexus.  ... This practice, however, can have troubling consequences. ... [T]he [Board]'s practice of assuming [particular social group] and resolving cases on nexus grounds often inhibits the proper and orderly development of the law in this area by leaving the contours of protected status undefined, precluding further appellate review[.]" (citations omitted)).

ground. Thus, in the absence of evidence that the respondent would not have been treated in the same manner had she not held the status of head of household, we discern clear error in the [IJ]'s nexus finding and will reverse this portion of his decision.

(A.R. 4–5) (citations omitted). The Board vacated the IJ's decision and ordered Lopez–Cruz removed to Honduras.[5] The Board did not address Lopez–Cruz's petitions for withholding of removal and for relief under the CAT. Lopez–Cruz filed a timely petition for review.

## II.

"We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal issued by the BIA." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). We review the BIA's legal conclusions de novo and its factual conclusions for substantial evidence. *Valdiviezo–Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011). Under the substantial-evidence standard, we may reverse the Board's factual conclusions only if the record shows that any reasonable factfinder would be compelled to a different conclusion. *Id.*

"To qualify for asylum, an alien must show persecution, or a well founded fear of persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion." *Amanfi v. Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003) (citing

---

[5] The Board's original order, dated February 22, 2018, ordered Lopez–Cruz deported to El Salvador, despite the fact that Lopez–Cruz is a native and citizen of Honduras. Then, on July 6, and subsequent to Lopez–Cruz's petition for review, the Board vacated its February 22 order and issued a new order. The July 6 order is materially the same as the February 22 order except that it changed the country of removal from El Salvador to Honduras.

8 U.S.C. §§ 1101(a)(42)(A), 1158(a); *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481–82 (1992)). In 2005, Congress passed the REAL ID Act, Pub. L. No. 109-13, 199 Stat. 302 (2005), which clarified the standard for evaluating mixed-motive asylum cases: in cases where the persecutor has more than one motive, an applicant must prove the protected characteristic "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The protected ground need not be the primary motivation for persecution, but "asylum may not be granted if a protected ground is only an 'incidental, tangential, or superficial' reason for persecution of an asylum applicant." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009). "Therefore, a key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds." *Id.* at 129. The Board's decision on whether an asylum applicant has established the necessary nexus between persecution and a protected ground is based on factual findings that we review for substantial evidence. *See Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007) ("Substantial evidence also supports the IJ's conclusion that the [persecutors] w[ere] not motivated by animus [based on an alleged protected ground].").[6]

III.

---

[6] We note that "[w]e exercise *de novo* review over constitutional claims or questions of law and the application of law to facts." *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011), *as amended* (Jan. 13, 2012) (citation omitted).

6

The sole issue in this case is whether the Board erred by reversing the IJ's conclusion as to nexus. Under the deferential standard applicable in this case, we cannot say that it so erred.

Lopez–Cruz asks us to rule that the Board applied the incorrect standard to her asylum claim by requiring her to prove that, but for her status as a young female head of household, she would not face persecution. The Board has adopted a but-for standard in asylum cases, requiring asylum applicants to establish the "at least one central reason" standard of § 1158(b)(1)(B)(i) by showing that "the persecutor would not have harmed the applicant if the protected trait did not exist." *Matter of N –M–*, 25 I. & N. Dec. 526, 531 (BIA 2011) (citing *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009)). Whether that but-for standard is correct is not something we need to address here. Even if Lopez–Cruz were right that the Board applied the wrong standard, she has failed to demonstrate that a reasonable factfinder would be compelled to conclude that her status as a young female head of household would be at least one central reason for the persecution she fears. *See Gonzalez-Posados v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015) (noting in the withholding of removal context that to qualify as "one central reason" the reason must be "essential").

"Where the [Board] rejects an IJ's findings . . . we carefully scrutinize its reasoning to determine whether the [Board] has overstepped [its] bounds and misapplied the clear error standard by ignoring evidence relevant to determining the merits of a petitioner's claim, failing to supply cogent reasons for its rulings, substituting its own judgment for that of the IJ, or failing to defer to the IJ's findings." *Alimbaev v. Att'y*

7

*Gen.*, 872 F.3d 188, 197 (3d Cir. 2017) (citations and internal quotation marks omitted). We cannot say that the Board committed any such errors in this instance.

The IJ based his findings regarding nexus on the following evidence: (1) Lopez–Cruz's father left at a young age; (2) her mother is seriously ill; (3) her would-be persecutors told her that they would rape and kill her; (4) one persecutor told her: "You look like your sister. You will take your sister's place," which Lopez–Cruz took to mean that she would be possessed by the man; and (5) country reports indicating that female heads of household are a "vulnerable population" as defined by the Honduran government and are frequently victims of violence. With the exception of the country conditions evidence, the Board addressed each of these pieces of evidence in its opinion. Indeed, the Board accepted the IJ's fact finding on each aspect of Lopez–Cruz's petition except for the final conclusion that the findings demonstrated a nexus.

After carefully scrutinizing the BIA's reasoning, we cannot say that it was in any way wrong to conclude that the IJ clearly erred in finding that Lopez–Cruz had established the requisite nexus. While Lopez–Cruz need not prove the exact motive of her perpetrators, she carries the burden of providing "some evidence of [a motive based on a statutorily protected ground], direct or circumstantial." *Ndayshimiye*, 557 F.3d at 131 (alteration in original) (quoting *Elias-Zacarias*, 502 U.S. at 483). The record evidence suggests, at best, that Lopez–Cruz's status as a "young female head of household" provided an *opportunity* for her alleged persecutors to take advantage of her; it does not establish that such status was relevant to their *motivation*. The facts that Lopez–Cruz's father is absent and her mother is ill, while perhaps indicative of her

8

social vulnerability, do not evidence any motive of her persecutors. After all, such facts would also provide the same opportunity for alleged persecutors to take advantage of a young woman who was not the head of household.

Similarly, country reports indicating that female heads of household are considered a vulnerable population do not relate to the particular motives of Lopez–Cruz's would-be persecutors. The only evidence in the record relating to the motives of Lopez–Cruz's would-be persecutors—that one wanted to "make [her] the 'woman of the house,'" (A.R. 220), and that she would "take [her] sister's place," (A.R. 95)—does not tend to suggest that they were motivated by Lopez–Cruz's status as a young female head of household. As such, it was not unreasonable for the BIA to conclude that, even if Lopez–Cruz belonged to a protected group, she did not satisfy her burden of establishing that her membership in that group was more than an "incidental, tangential, or superficial" reason for the persecution she fears. *Ndayshimiye*, 557 F.3d. at 130.

## IV.

For the foregoing reasons, we will grant Respondent's unopposed motion to supplement the record, grant Respondent's motion to supplement the brief, and deny the petition for review.

9