[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14259
Non-Argument Calendar
_____

Agency No. A216-362-955


STEPAN LEPETIUK,

                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 5, 2019)

Before WILSON, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Stepan Lepetiuk seeks review of the Board of Immigration Appeals' decision denying his petition for asylum and withholding of removal. The BIA concluded that Mr. Lepetiuk failed to establish a fear of persecution on account of one of the protected grounds set forth in the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(42)(a). Mr. Lepetiuk argues that the BIA's decision should be reversed because the two cases used to deny him asylum in fact support a grant of relief, and because he sufficiently showed that he was persecuted based on his political opinion. After reviewing the record and the parties' briefs, we affirm.

**I**

Mr. Lepetiuk served as a criminal investigator in Ukraine for 13 years. In 2014, special units were formed to control persistent riots and investigate potential government corruption; Mr. Lepetiuk served on one of these units. Mr. Lepetiuk testified before the immigration judge that he was attacked and threatened due to his participation in the investigation. These attacks on and threats against Mr. Lepetiuk began with threatening phone calls in 2014. Then—on April 18, 2014— Mr. Lepetiuk's car was broken into and his work papers were stolen. In 2015 Mr. Lepetiuk was run off the road. And in January of 2016 his house was broken into and ransacked but no valuables were stolen. Mr. Lepetiuk also testified that others

in his special unit received similar threatening phone calls, and unlike him, decided to forgo the investigation immediately.

Mr. Lepetiuk explained that during his involvement with the special unit investigations, he obtained confessions and statements indicating that Andriy Parubiy—then the Secretary of the National Security and Defense Council of Ukriane and currently the Chairman of the Ukrainian Parliament—organized the recurring riots. Sometime afterwards, the individuals who implicated Mr. Parubiy were found dead.

Mr. Lepetiuk further testified that he was reprimanded by his superiors for refusing to hand over the original documents he had acquired during the investigations in November of 2015. Mr. Lepetiuk quit the investigations in March of 2016, applied for an American visa in August of 2016, and stayed in the United States until December of 2016. He also moved his wife and children to Belarus because his wife was unable to procure a visa. He returned briefly to Ukraine in December of 2016, thinking it was safe to come back, but quickly returned to the United States after he was stabbed.

Mr. Lepetiuk was arrested and detained by immigration officers on February 28, 2018 and was charged with being in the United States for a time longer than permitted. He submitted an application for asylum and for withholding of removal, but was denied both forms of relief. The IJ concluded that Mr. Lepetiuk

did not connect the harm that he suffered with a protected ground.  *See* 8 U.S.C. § 1101(a)(42)(A).  Mr. Lepetiuk appealed, and the BIA affirmed the immigration judge's decision.  The BIA relied on its earlier decisions in *Matter of Fuentes*, 19 I. & N. Dec. 658 (BIA 1998), and *Matter of N-M*, 25 I. & N. Dec. 526 (BIA 2011), for the proposition that persecution faced by law enforcement officials in relation to their work does not constitute a protected ground for purposes of asylum.  Mr. Lepetiuk now petitions for review.

## II

"To the extent that the [BIA's] decision was based on a legal determination, our review is *de novo*."  *Diallo v. United States Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).  And to the extent that the BIA interpreted a statutory term, we defer to the BIA's interpretation if it is reasonable.  *See Perlera-Escobar v. Executive Office for Immigration*, 894 F.2d 1292, 1296 (11th Cir. 1990) (citing *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984)).

We review the BIA's factual determinations for substantial evidence.  We view "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Diallo*, 596 F.3d at 1332.  Therefore, the BIA's decision must be affirmed "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001).  And "the mere fact

that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Diallo*, 596 F.3d at 1332.

### III

In order to be granted asylum, an individual must establish that he or she has been persecuted or has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). *See also Rodriguez Morales v. United States Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). Mr. Lepetiuk argues that *Matter of Fuentes* and *Matter of N-M* do not compel a denial of asylum but rather support a grant of asylum because his investigative work was related to political corruption, and therefore had political motives. He also argues we should apply *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), and that under a *Chevron* analysis, *Matter of Fuentes* and *Matter of N-M* constitute an unreasonable interpretation of the INA.

The government responds that the petition for review should be denied because Mr. Lepetiuk did not establish a nexus to a protected ground. Moreover, the government argues that a *Chevron* analysis is not applicable here and that, even if it is, *Matter of Fuentes* and *Matter of N-M* are reasonable interpretations of the INA.

### A

We first address Mr. Lepetiuk's argument regarding *Chevron*. In his reply brief, Mr. Lepetiuk explains for the first time why he believes a *Chevron* analysis applies. He contends that both *Matter of Fuentes* and *Matter of N-M* interpret the following statutory language in § 1101(a)(42)(A): "persecution . . . on account of . . . political opinion." And he argues that to the extent that this interpretation bars all law enforcement officers from claiming political persecution, this interpretation is unreasonable. Even if we agreed with Mr. Lepetiuk that *Chevron* applied to the BIA's reliance on *Matter of Fuentes* and *Matter of N-M* in this case, we disagree that those cases' purported construction of the statute is unreasonable. *Cf. Perlera-Escobar*, 894 F.2d at 1297–99 (reviewing the BIA's interpretation of the same provision under *Chevron* and granting deference to the BIA's conclusion that harms arising in the context of civil war are not persecution based on political opinion).

Both *Matter of Fuentes* and *Matter of N-M* concerned the extent to which dangers faced by police and other government officials in relation to their work can constitute a protected ground for purposes of asylum. *See Matter of Fuentes*, 19 I. & N. Dec. 658; *Matter of N-M*, 25 I. & N. Dec. 526. In *Matter of Fuentes*, the BIA concluded that persecution against police officers for actions undertaken while on duty is not "on account of . . . political opinion." 19 I. & N. Dec. at 661. It reasoned "[s]uch dangers are perils arising from the nature of their employment

6

and domestic unrest rather than 'on account of' immutable characteristics or beliefs . . . ." *Id.* In *Matter of N-M*, the BIA concluded that there is a difference between an applicant suffering retaliation due to personal grievances that arose while he was fulfilling his or her job duties, and being persecuted "on account of . . . political opinion." 25 I. & N. Dec. at 534.

Mr. Lepetiuk argues that this construction of the statute is unreasonable because it bars any political persecution claim by law enforcement officers. But this reading of the BIA decisions is too broad. Under *Matter of Fuentes*, for example, a law enforcement officer is ineligible for asylum for dangers he was exposed to in the line of duty. *See* 25 I. & N. Dec. at 662. But if an officer is persecuted for reasons beyond the scope of his employment, that persecution may give rise to an asylum claim. Indeed, we have previously noted that under *Matter of Fuentes* a police officer could have an asylum claim for harms suffered after the hostilities giving rise to on-duty dangers have ceased. *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006) (noting that "there is no evidence that the Cali cartel has ceased its hostilities"). *See also Castaneda-Castillo v. Holder*, 638 F.3d 354, 365 (1st Cir. 2011) ("*Fuentes* does not establish a *per se* bar to consideration of attacks that occurred while the respondent happened to be on active duty.").

Moreover, we have previously followed the BIA's reasoning in *Matter of Fuentes* in several asylum cases. *See Castillo-Arias*, 446 F.3d at 1198; *Sontay v. U.S. Att'y Gen.*, 723 F. App'x 707, 711 (11th Cir. 2018). So have several of our sister circuits. *Compare Pavlyk v. Gonzales*, 469 F.3d 1082, 1089 (7th Cir. 2006) (conduct within the scope of governmental duties, including the duties of a prosecutor, cannot alone constitute political expression), *with Haxhiu v. Mukasey*, 519 F.3d 685, 690–91 (7th Cir. 2008) (anticorruption activities beyond the scope of military employment can constitute political expression), and *Grava v. INS*, 205 F.3d 1177, 1181–1182 (9th Cir. 2000) (explaining that military officials can claim political persecution, but not for dangers arising solely from their job duties). Accordingly, we disagree with Mr. Lepetiuk that the BIA's purported construction of § 1101(a)(42)(A) is unreasonable.[1]

**B**

We now turn to a review of the BIA's factual determination for substantial evidence. The essential question is whether Mr. Lepetiuk has shown that, notwithstanding his job duties, he was persecuted on account of his political opinion. For an individual to be eligible for asylum based on political opinion, he or she must establish, with credible evidence, (1) that he suffered past persecution

---

[1] Mr. Lepetiuk also argues that the BIA's decisions in *Matter of Fuentes* and *Matter of N-M* are arbitrary and capricious. But challenges to an agency's statutory interpretation are reviewed under the *Chevron* framework and, in any event, Mr. Lepetiuk's arbitrary-and-capricious argument is essentially coextensive with his *Chevron* argument. Accordingly, we decline to separately address it here.

on account of his political opinion, or (2) a "well-founded fear" that his political opinion will cause future persecution. *See Silva v. United States Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). To set aside the BIA's findings under the substantial evidence test, the evidence must be "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

Although an individual does not need to show that he was persecuted solely because of his political opinion, he must produce evidence from which it is reasonable to conclude that the harm was motivated, at least in part, by an actual or imputed political opinion. *See Rodriguez Morales*, 488 F.3d at 889. *See also* 8 U.S.C. § 1158(b)(1)(B)(i). Here, the record does not compel the conclusion that Mr. Lepetiuk's actions gave rise to an actual or imputed political opinion.

First, the mere fact that Mr. Lepetiuk was a part of the special unit investigating possible government corruption is insufficient to establish an actual or imputed political opinion because Mr. Lepetiuk was assigned to that unit as part of his duties as an investigator. In fact, at the hearing before the IJ, Mr. Lepetiuk—in response to a question asking him whether he committed any crimes in the Ukraine—explained "I just did my duty. I did whatever I had to do in the line of service. I was investigating the case which was given to me to investigate, and I did not break any law doing that."

9

Second, Mr. Lepetiuk's refusal to allow the alleged threatening phone calls to deter him from the investigation does not compel the conclusion that Mr. Lepetiuk expressed a political opinion.    Although refusing to forgo the investigation likely required courage under the circumstances, Mr. Lepetiuk was essentially fulfilling his job requirement.

Whether Mr. Lepetiuk's refusal to hand over the documents he had acquired during the investigation to his superiors establishes a political opinion is a closer question.    But under the substantial evidence test, we draw all reasonable inferences in favor of the BIA's decision.    *See Diallo*, 596 F.3d at 1332. And absent more evidence or allegations as to those documents and Mr. Lepetiuk's actions, the record does not compel a finding that these actions established or imputed a political opinion.

## IV

For the foregoing reasons, we deny Mr. Lepetiuk's petition.

**PETITION DENIED.**

10