**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3489
_____

JULIO CESAR BEDOYA GUERRA,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision
of the Board of Immigration Appeals
(Agency No. BIA-1: A201-939-474)
Immigration Judge: Pallavi S. Shirole
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 1, 2022

Before: RESTREPO, ROTH, and FUENTES, *Circuit Judges*

(Opinion filed: June 14, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Julio Cesar Bedoya Guerra ("Bedoya"), a native and citizen of Colombia, conceded his removability from the United States but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") denied Bedoya's applications for relief, and the Board of Immigration Appeals ("BIA") dismissed his appeal. Bedoya now petitions this Court for review. Because we see no error in the BIA's decision, we will deny the petition.

I.

Bedoya entered the United States in April 2019 on a temporary visitor visa. When the visa expired six months later, he failed to leave the country. In January 2020, the Department of Homeland Security ("DHS") served Bedoya with a Notice to Appear charging him as removable from the United States under 8 U.S.C. § 1227(a)(1)(B) for "remain[ing] . . . for a time longer than permitted."[1] Bedoya appeared before an IJ and admitted the charge. He expressed a fear of returning to Colombia, however, so the IJ continued the hearing to allow him to apply for asylum, withholding of removal, and CAT protection. Bedoya so applied and later testified in support of his application at an evidentiary hearing. He testified that, in Colombia, he worked as a commercial advisor for a car dealership. In November 2018, a man named Juan Perez approached him and proposed that the two go into business together by opening a new dealership, which Perez would finance. According to Bedoya, when he hesitated, Perez and his associates began

---

[1] Certified Administrative Record (hereinafter "AR") 200–01.

2

to threaten him and his family. Bedoya went to the police, who listened to his account and told him to report any further intimidation. Sometime later, "the unthinkable happened": Bedoya was abducted by Perez and taken to an undisclosed location, where he was bound, beaten, and placed in a tub of water.[2] Perez's associates threatened to kill Bedoya and his family if he did not cooperate, and one suggested that they knew he had gone to the police. Bedoya eventually agreed to cooperate and the men released him the next day. He did not go back to the police because he feared that Perez would find out again. Instead, he applied for an American visa and left Colombia a few months later.

After considering Bedoya's testimony and several exhibits, the IJ denied his applications for relief in an 11-page decision. The IJ found that, although Bedoya's testimony was credible, his claim lacked sufficient corroboration. The IJ also found that, even if sufficiently corroborated, Bedoya's applications failed on the merits. On asylum, the IJ found that the harm Bedoya suffered did not rise to the level of persecution; he was targeted for financial gain rather than a protected reason such as race, religion, or membership in a particular social group; and it would be reasonable for him to internally relocate within Colombia if he returned. Because withholding of removal requires a higher showing than asylum, the IJ found that Bedoya's application for that form of relief also failed. Finally, on CAT protection, the IJ found that the harm Bedoya suffered in the past did not meet the legal definition of torture; he has not shown that he is likely to face harm rising to the level of torture in the future; and he has not shown that the Colombian

---

[2] AR156–59.

government would acquiesce in any such harm.  The IJ accordingly denied Bedoya's

applications for relief and ordered him removed to Colombia.  Bedoya appealed to the

BIA, but the BIA dismissed the appeal after finding no reversible error in the IJ's

analysis.  Bedoya then timely petitioned this Court for review.

## II.[3]

Bedoya argues that the BIA erred in affirming the IJ's denial of asylum,

withholding of removal, and CAT protection.  We will address each argument in turn.

## A.

To establish eligibility for asylum, an applicant must show that they are "unable or

unwilling to return" to their home country "because of persecution or a well-founded fear

of persecution on account of race, religion, nationality, membership in a particular social

group, or political opinion."[4]  A fear of persecution is "well-founded" when it is both

"subjectively genuine and objectively reasonable."[5]  A person is persecuted "on account

of" a protected ground when that ground is at least "one central reason" for the

persecution.[6]  The applicant bears the burden of establishing their entitlement to asylum.[7]

Bedoya argues that the BIA erred in denying him asylum because he was and will

again be persecuted by Perez for a protected reason: his membership in the particular

---

[3] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3).  *Arreaga Bravo v. Att'y Gen.*, 27 F.4th 182, 185 (3d Cir. 2022).  We have jurisdiction under 8 U.S.C. § 1252(a).  *Id*.

[4] *Nsimba v. Att'y Gen.*, 21 F.4th 244, 247 (3d Cir. 2021) (quoting 8 U.S.C. §§ 1101(a)(42)(A) and 1158(b)(1)(B)).

[5] *Nsimba*, 21 F.4th at 247 (citations omitted).

[6] *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).

[7] 8 U.S.C. § 1158(b)(1)(B)(i).

social group of "associate at a small business."[8]  Bedoya never made this argument before the BIA, however, so we lack jurisdiction to consider it.[9]  And even if we had jurisdiction to consider the argument, we are unpersuaded.  The IJ found that Perez targeted Bedoya for criminal and financial reasons rather than statutorily-protected ones.  More specifically, the IJ found that Bedoya was a "pawn in [Perez's] scheme" to launder money.[10]  The BIA affirmed this finding on appeal, and we have no grounds to disturb it because it is supported by substantial evidence in the record.[11]  Bedoya testified that Perez repeatedly asked him about the "process of acquiring new vehicles" and offered to finance a new car dealership if Bedoya would sell the cars, an arrangement ripe for money laundering.[12]  Bedoya also testified that he had to flee Colombia because a group of drug traffickers wanted him to engage in "*money laundering activities* through [his] work."[13]  Bedoya's own testimony thus confirms what the IJ found: that Perez's aim was to make money and advance a criminal enterprise, not to persecute Bedoya on the basis of his membership in a particular social group.

---

[8] Petitioner's Opening Br. at 8.

[9] *See* AR4 (BIA discussing Bedoya's failure to identify a particular social group to which he belonged); *Xie v. Ashcroft*, 359 F.3d 239, 245 n.8 (3d Cir. 2004) (explaining that the administrative exhaustion requirement in 8 U.S.C. § 1252(d)(1) divests this Court of jurisdiction over issues raised for the first time on appeal).

[10] AR72.

[11] *See Matter of N-M-*, 25 I. & N. Dec. 526, 532 (B.I.A. 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge."); *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 106 (3d Cir. 2010) ("We affirm any findings of fact supported by substantial evidence and are bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." (internal quotation marks and citations omitted)).

[12] AR151–53.

[13] *Id.* at 150 (emphasis added).

Nor has Bedoya established a well-founded fear of future persecution on account of a protected ground. He submits that, if he were returned to Colombia, Perez would likely attack him again "in retaliation for [him] leaving the country."[14] Though we are not unsympathetic to Bedoya's situation, "[c]onflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."[15] Bedoya has therefore failed to establish his entitlement to asylum, as determined by the IJ and the BIA.[16]

B.

To qualify for withholding of removal, an applicant must show that removal would cause his or her "life or freedom [to] be threatened . . . because of [his or her] race, religion, nationality, membership in a particular social group, or political opinion."[17] The applicant must show "a clear probability of persecution," meaning that it is "more likely than not that [they] would suffer persecution upon returning home."[18] "Since this

---

[14] Petitioner's Opening Br. at 9.

[15] *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015); *see also Thayalan*, 997 F.3d at 143–44 (finding that the BIA properly denied the petitioner's application for asylum because the extortion he faced in his home country was motivated by money rather than a protected ground).

[16] Because Bedoya's arguments for asylum fail on the factual and jurisdictional grounds just discussed, we do not reach other issues related to his asylum claim, including whether "associate at a small business" qualifies as a "particular social group" under 8 U.S.C. § 1101(a)(42)(A).

[17] 8 U.S.C. § 1231(b)(3)(A).

[18] *Blanco v. Att'y Gen.*, 967 F.3d 304, 315 (3d Cir. 2020) (internal quotation marks and citations omitted) (cleaned up).

standard is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal."[19]

Here, the IJ found that, because Bedoya failed to qualify for asylum, he also failed to qualify for withholding of removal. We agree. Because Bedoya has failed to connect any persecution he has faced in the past, or will face in the future, to a protected ground, his claims for asylum and withholding of removal necessarily fail.

## C.

To qualify for CAT relief, an applicant must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal."[20] "Torture" is defined as: "(1) an act causing severe physical or mental pain or suffering; (2) [that is] intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions."[21] Public officials acquiesce to torture when they are aware of it and breach their legal responsibility to intervene and prevent it.[22] Evidence of willful blindness can also establish an official's acquiescence.[23]

In *Myrie v. Attorney General*, we laid out the framework immigration courts must use when analyzing claims for CAT protection.[24] The IJ must answer two questions:

---

[19] *Id.*

[20] *Arreaga Bravo*, 27 F.4th at 186 (quoting 8 C.F.R. § 1208.16(c)(2)).

[21] *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)).

[22] *Myrie*, 855 F.3d at 516.

[23] *Id.*

[24] *Id.* at 509.

"(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?"[25] The first question is a factual one that the BIA reviews for clear error.[26] The second question is a legal one that the BIA reviews de novo.[27] Determining whether a public official will acquiesce to torture also requires a two-step analysis.[28] First, the IJ must make a factual determination about "how public officials will likely act in response to the harm the petitioner fears."[29] Next, the IJ must determine "whether the likely response from public officials qualifies as acquiescence."[30] Again, the BIA reviews the first question for clear error and the second de novo.[31]

The IJ denied Bedoya's application for CAT protection because the IJ found, among other things, that Bedoya had failed to show that any harm he will face if returned to Colombia will be "at the consent or acquiescence of a public official."[32] The IJ found that Bedoya went to the police when Perez initially threatened him and could do so again if needed. The IJ also found that, although Bedoya is afraid Perez will find out if he goes to the police again, that does not amount to governmental acquiescence. On appeal, the BIA confirmed the IJ's analysis under the *Myrie* framework. It saw no clear error in the IJ's finding that the police would try to protect Bedoya if he was threatened by Perez

---

[25] *Id*. at 516 (internal quotation marks and citations omitted).
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*. at 516–17.
[32] AR74.

again. And, it found that the government's likely response—attempting to protect Bedoya—does not constitute acquiescence as a matter of law.

Bedoya contends that the BIA erred in denying him CAT protection because the police are "friends of [] Perez" and would leave him to "fight off [] Perez and his gang" on his own if he is returned to Colombia.[33] Bedoya is arguing, in other words, that the IJ and BIA misinterpreted the evidence in the record about how the police are likely to respond to the harm he would face upon returning to Colombia. But it is not our role to "re-weigh evidence or . . . substitute [our] own factual determinations for those of the agency."[34] Our mandate is instead to "affirm any findings of fact supported by substantial evidence" even if "there is more than one way to view the record before us."[35] Bedoya's view of the record has some support, most notably his testimony that when he was abducted by Perez and his men, one of them seemed to know that he had gone to the police. However, it is unclear whether that information came from within the police, whether Perez's men found out some other way, or whether they inferred it from the time it was taking Bedoya to respond to their offer. And Bedoya testified that when he went to the police, they "acknowledge[d] what [he was] telling them" and instructed him to let them know of any further intimidation because they would "consider[] it a formal threat."[36]

---

[33] Petitioner's Opening Br. at 10.
[34] *Thayalan*, 997 F.3d at 143.
[35] *Espinosa-Cortez*, 607 F.3d at 106; *Gonzalez-Posadas*, 781 F.3d at 688.
[36] AR155.

Given this testimony, there is substantial evidence to support the determination of the IJ and BIA that the Colombian police will likely try to protect Bedoya if he seeks their help in the future. And because this response would not amount to governmental acquiescence in any harm Bedoya faces, he has failed to establish his entitlement to CAT relief.

## III.

For these reasons, we will deny the petition for review.