NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0206n.06

Case No. 18-3795

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SEBASTIAN NICOLAS-SEBASTIAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

Before: GUY, CLAY, and GRIFFIN, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Sebastian Nicolas-Sebastian is a Guatemalan national currently in the United States. The Memphis Immigration Court denied his application for asylum, so he appealed to the Board of Immigration Appeals. The Board denied his appeal and ordered his removal. Sebastian[1] now petitions for review of the Board's decision. For the reasons below, we deny the petition.

## I. BACKGROUND

Sebastian grew up in a small, rural town in Guatemala. A few months after his fourteenth birthday, an unknown gang member began periodically calling him on the phone. Sebastian

---

[1] We adopt the mononym that the petitioner used in his briefing.

believes some of his soccer teammates may have been part of the gang and passed his telephone number along. The caller encouraged Sebastian to join the gang, but Sebastian refused, explaining that his Christian faith forbade the theft and violence attendant to gang membership. The caller suggested that this did not matter; the important thing was "to enjoy life with money and with the things that you do." Sebastian still refused, and the caller became agitated. He began to call on a weekly basis. He told Sebastian that he wanted to hurt and kill him and revealed that he knew where Sebastian went to school, where he played soccer, and where he lived. When Sebastian finally disclosed the calls to his parents, they began devising ways for him to flee the country.

Sebastian's first three escape attempts were short lived. On his first try, he made his way to Oaxaca, Mexico and hired a smuggler. But Mexico officials soon apprehended him and sent him back to Guatemala. All told, he had been gone 15–20 days. A month or so later, Sebastian again tried to flee. Again, he hired a smuggler, but the smuggler robbed him. He returned to Guatemala within a week of his departure. A few months later, he made a third attempt. As before, a hired smuggler robbed him, forcing him to return to Guatemala within a month. Each time Sebastian returned home from these attempts, the calls resumed, and the caller's tone was angrier. He insulted Sebastian with racial slurs and asked why Sebastian was trying to escape.

Four months later, Sebastian again left Guatemala. This time, though, he successfully made his way to the United States. He entered the country without inspection in May 2014 through Sasabe, Arizona. He has been in the country ever since.

Soon after Sebastian's arrival in the United States, the Department of Homeland Security issued him a notice to appear for removal proceedings because he was present in the United States without having been admitted or paroled. Sebastian conceded the truth of the charges but asked for the opportunity to seek asylum. His case was referred to the asylum office, but that office

declined to grant his asylum claim, so his case was sent to the Memphis Immigration Court. That court held a hearing and ultimately found Sebastian credible and his claims largely corroborated. Nonetheless, the court concluded that he was not entitled to the relief he sought. The court therefore denied his applications for asylum and withholding of removal and ordered that he be removed to Guatemala. The Board affirmed those decisions in July 2018. Sebastian now appeals only the denial of his application for asylum.

## II. JURISDICTION AND STANDARD OF REVIEW

The Immigration and Nationality Act (INA) permits this court to review a final order of removal and governs our standard of review. 8 U.S.C. § 1252(a)(1). We review questions of law de novo but give substantial deference to the Board's interpretation of the INA and its accompanying regulations. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review factual findings under the substantial-evidence standard, whereby "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III. DISCUSSION

When evaluating an asylum application, we first ask: does the applicant meet the statutory definition of "refugee?" *Kouljinski v. Keisler*, 505 F.3d 534, 541 (6th Cir. 2007). By law and regulation, an applicant "may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1101(a)(42). The persecution, past or present, must be "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(b)(1), (2)(i)(A). The applicant bears the burden to prove that at least one of these protected grounds "was or will be at least one central reason for persecuting

the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The IJ and the Board concluded that Sebastian failed to carry his burden and Sebastian now argues this was error.

To begin, Sebastian argues that the IJ and the Board failed to follow agency precedent establishing that restrictions on religion constitute persecution. Sebastian contends that his refusal to join the gang "was grounded in his evangelical Christian beliefs." He explains that an "essential component of [his] faith is to be able to evangelize" and the practice of his faith leads him to "refrain[] from stealing [and] selling and using drugs." He thus concludes that "[s]uccumbing to the caller's demands would fundamentally inhibit his religious practices and require him to live in contravention of his religion."

Restrictions on religion can sometimes constitute persecution, but the persecutor's motive matters. The persecution of the asylum-seeking alien must have been motivated, in some measure, by the alien's religion, and the religion must have been one central reason for the persecution. *Matter of N-M-*, 25 I. & N. Dec. 526, 532 (BIA 2011). "Thus, simply demonstrating resistance to pressure to engage in certain acts and consequent retaliation for this resistance is insufficient . . . . Rather, an alien must provide some evidence, direct or circumstantial, that the persecutor's motive to persecute arises from the alien's" religion. *Id.* at 529. "[A]n alien must demonstrate that the persecutor would not have harmed the applicant if the protected trait did not exist." *Id.* at 531.

The IJ determined that there was "no evidence whatsoever" that the gang member made the calls and threats because Sebastian is Christian. Rather, the caller made the threats because Sebastian "did not want to join the gang." The Board likewise concluded that, while "the caller may have 'belittled' [Sebastian's] religion," this did not "necessarily establish that [Sebastian] was or would be targeted because he is an evangelical Christian."

The record supports these conclusions. At the hearing before the IJ, Sebastian conceded that the caller never said anything to him about his religion. And when Sebastian was asked why he believed he was targeted, he gave several answers: it was because he was poor, it was because he was hardworking, and it was because of the "good things" he did in compliance with what he was taught at church.

Sebastian suggests that these facts focus too narrowly on the recruitment efforts and urges the court to look at his "well-founded fear that if he returns to Guatemala" he will either be killed for refusing to join the gang or, if he joins it, "will not be able to practice his religion." Yet even with an eye toward those possible future harms, Sebastian has still not shown that the gang wishes to harm him because of his religion. Sebastian may choose not to join the gang out of religious conviction. And if he does join, his membership may require him to violate the tenets of his faith. But the impact on Sebastian's religious practice says nothing of the gang's own motives for pressuring him to join, and this is what matters. Sebastian failed to carry his burden to show that his religion is one central reason that the gang persecuted him or might in the future.

Sebastian also argues that the Board erred by narrowly construing his political-opinion claim. The Board explained that the IJ "properly found that [Sebastian's] expressed refusal to join the gang did not constitute a political opinion, nor has it been shown that [Sebastian's] refusal was perceived as a political opinion by the gang member, and that he sought or would seek to target [Sebastian] on account of this political opinion." The Board supported its conclusion with citations to two of its prior decisions: *Matter of S-E-G-*, 24 I. & N. Dec. 579 (BIA 2008) and its companion case, *Matter of E-A-G-*, 24 I. & N. Dec. 591 (BIA 2008). Sebastian argues that the Board misapplied those cases to the facts here.

Both cases bear a resemblance to this one. In *S-E-G-*, teenage siblings fled their country to get away from a gang that threatened them for refusing to join. They asserted that the gang's threats constituted persecution "on account of their anti-gang political opinion." 24 I. & N. Dec. at 588. In *E-A-G-*, a young man likewise fled from the threats of a gang pressuring him to join. He argued that his refusal to join constituted an anti-gang political opinion for which the gang persecuted him. 24 I. & N. Dec. at 596.

The Board rejected the arguments raised in both cases. In *S-E-G-*, it explained that the asylum seekers failed to establish that the gang persecuted or would persecute them on the basis of their political opinions and there was "no indication that the MS-13 gang members who pursued [them] had any motives other than increasing the size and influence of their gang." 24 I. & N. Dec. at 589. And in *E-A-G-*, the Board similarly observed that there was no evidence that the gangs "would persecute the respondent because of any political opinion, real or imputed, that he holds. Instead, any such actions would appear to be motivated by rivalry between gangs and a desire of rival gangs to increase their own power and influence and to diminish that of their rivals." 24 I. & N. Dec. at 597. The Board likened the situation to a case involving a guerrilla organization and emphasized "that an alien seeking asylum to avoid conscription must adduce some evidence, direct or circumstantial, that her opposition was motivated by her political opinions, that her political opposition was known to guerrillas, and that they persecuted her, or likely would do so upon her return, because of that opinion." *Id.* at 596–97. Concededly, in both *S-E-G-* and *E-A-G-* the asylum seekers also failed to provide evidence of their political activity or established anti-gang position, but the cases did not turn on this lack of evidence. Critically, the asylum seekers failed to show that the gangs persecuted them *because of* their political opinions.

Here, the Board likewise concluded that Sebastian failed to demonstrate that the gang targeted and threatened him because of his religious beliefs or political opinions. The Board did not, therefore, err in applying those decisions to this case. As the IJ noted, Sebastian did provide some testimony that he publicly expressed disapproval of the gang's activities. But the IJ and the Board found that there was no evidence that the gang threatened him on that basis. For our part, we "cannot state with conviction what motivated the purported persecutor," and thus "must defer to the BIA's own findings under the deferential substantial-evidence standard." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008) (quoting *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir. 1997)); *see also Matter of N-M-*, 25 I. & N. Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by us for clear error.").

In sum, Sebastian has failed to carry his burden to establish that his religion or political beliefs were or will be at least one central reason for his persecution. The Board did not err in affirming the IJ's denial of his application for asylum on that basis. Given this conclusion, we need not reach Sebastian's other arguments concerning how to evaluate the perspective of a child, the definition of extortion, the IJ's finding on his ability to relocate, or the IJ's taking of judicial notice concerning the prevalence of gangs.

The petition is **DENIED**.