[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10752
Non-Argument Calendar

_____

Agency No. A075-463-040

MARDO ALEXANDER ADAME-RODRIGUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 7, 2020)

Before WILSON, LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Mardo Adame-Rodriguez, a citizen of Colombia, seeks review of the

dismissal by the Board of Immigration Appeals ("BIA") of his appeal of the

Immigration Judge's ("IJ") order, denying his applications for withholding of

removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 1208.16(c). In his petition, Adame-Rodriguez argues that: (1) substantial evidence does not support the BIA's determination that he was not targeted on account of a political opinion, he had not suffered past persecution, and he could safely relocate; (2) the BIA did not give reasoned consideration to his evidence; and (3) the BIA erred in upholding the IJ's decision to give little weight to his expert witness's opinion in denying CAT relief. After careful review, we deny the petition.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts, agrees, or relies on the IJ's reasoning and findings. Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014); see also Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948-51 (11th Cir. 2010). Because the BIA agreed with the IJ's findings and reasoning concerning whether Adame-Rodriguez suffered past persecution, was targeted on account of a political opinion, and was entitled to CAT relief, we review the IJ's and BIA's decisions together in this case.

We review the BIA's factual determinations under the substantial evidence test, which requires us to view the record in the light most favorable to the BIA's decision and draw all reasonable inferences in its favor. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc); Forgue v. U.S. Att'y Gen., 401 F.3d

2

1282, 1286 (11th Cir. 2005). We will affirm the BIA's decision if, on the record as a whole, it is supported by reasonable, substantial, and probative evidence. Adefemi, 386 F.3d. at 1027. In order to reverse administrative factual findings, we must conclude that the record "compels" reversal, not merely that it supports a different result. Id. Our inquiry asks "whether there is substantial evidence for the findings made by the BIA, not whether there is substantial evidence for some other finding that could have been, but was not, made." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1324 (11th Cir. 2001). We review the BIA's legal determinations de novo. Castillo Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006). We also review de novo the claim that the BIA failed to give evidence reasoned consideration. Ali v. U.S. Att'y Gen., 931 F.3d 1327, 1333 (11th Cir. 2019).

First, we are unpersuaded by Adame-Rodriguez's argument that substantial evidence does not support the BIA's determination that he had not been targeted on account of a political opinion. An alien shall not be removed if he can show that his life or freedom would be threatened in his home country on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). "The alien bears the burden of demonstrating that it is more likely than not [he] will be persecuted or tortured upon being returned to [his] country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quotations omitted). An alien may satisfy his burden by showing that: (1) he

3

suffered past persecution based on a protected ground, which establishes a presumption of future harm; or (2) his life or freedom would be threatened, if he were to be removed to the country in question, based on a protected ground. Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1365 (11th Cir. 2011).

An alien may seek withholding of removal on the basis that he was persecuted because of his actual or imputed political opinion. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004). In order to successfully show persecution under an imputed political opinion theory, the alien must show that "a political opinion was correctly or incorrectly attributed to him and he was persecuted because of that opinion." Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1315 (11th Cir. 2006). An alien's opposition to government corruption may support a finding that he was targeted on account of an actual or imputed political opinion. Matter of N-M-, 25 I. & N. Dec. 526, 528 (BIA 2011). A persecutor may have a reason to impute such a political opinion where the alien engages in acts such as campaigning against corruption, attending political anti-corruption rallies, distributing anti-corruption materials, or exposing corruption. Id.

Here, Adame-Rodriguez claimed that he feared returning to Colombia because his cousin Olman Alfredo Lasses-Adame had worked undercover to expose police corruption and had exposed 11 officers; Olman was murdered by four armed men, three of whom Adame-Rodriguez believed to be Olman's police-officer friends

4

with whom Adame-Rodriguez had previously socialized; Adame-Rodriguez was with Olman before his murder; armed men chased Adame-Rodriguez through a field following the murder; his aunt was abducted shortly thereafter; and her captors indicated that she would only be released if Adame-Rodriguez turned himself in.

However, substantial evidence supports the agency's determination that Adame-Rodriguez was not targeted on account of an actual or imputed political opinion. While an anti-corruption stance qualifies as a political opinion, the evidence does not show that Adame-Rodriguez's attackers had any reason to believe that he actually held a political opinion, or to impute one to him. See Scheerer, 445 F.3d at 1315; Matter of N-M-, 25 I. & N. Dec. at 528. As the record reflects, Adame-Rodriguez never spoke about government corruption when he socialized with his cousin Olman and his three police-officer friends; Adame-Rodriguez was not politically active; he did not assist Olman with his anti-corruption work; nor was he a government informant himself. The only association that he had with anti-corruption work was through his friendship with Olman, and he was not privy to the details of Olman's anti-corruption work. Further, because Adame-Rodriguez regularly socialized with Olman and his friends, his association with Olman on the day of the attack would not by itself cause his attackers to impute a political opinion to him, since it would not be unusual for the two of them to be seen together.

Overall, the extent of Adame-Rodriguez's association with anti-corruption

activity was limited to a basic knowledge of Olman's undercover work and his social connection with Olman. This loose connection does not resemble the types of activities that generally show that an individual was targeted due to an anti-corruption political opinion -- like campaigning against corruption, attending political anti-corruption rallies, distributing anti-corruption materials, or exposing corruption. See Matter of N-M-, 25 I. & N. Dec. at 528. While the agency did not give an alternate explanation for the pursuit of Adame-Rodriguez by Olman's killers, that does not undermine the substantial evidence supporting its decision. See Mazariegos, 241 F.3d at 1324. Thus, because Adame-Rodriguez does not otherwise argue that he was targeted on account of a protected ground and because this nexus is required for both prongs of the withholding-of-removal analysis, we need not address his arguments that he suffered past persecution or has a reasonable fear of future persecution. See Seck, 663 F.3d at 1365.

Nor are we convinced by Adame-Rodriguez's claim that the agency did not give reasoned consideration to his evidence. The IJ or BIA must consider all evidence and issues put forth by the alien and "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006) (quotations omitted). Remand to the agency is appropriate "when a decision of an [IJ] or the BIA is so lacking in reasoned consideration and explanation that

6

meaningful review is impossible." Jeune v. U.S. Att'y Gen., 810 F.3d 792, 803 (11th Cir. 2016). "[T]he agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." Id.

The BIA need not specifically address each piece of evidence submitted. Ali, 931 F.3d at 1333. But the BIA must discuss evidence if it is "highly relevant," meaning that "the record would compel a different outcome" without a discussion of the evidence. Id. at 1334 (quotations omitted). In Ali, we held that the BIA hadn't given reasoned consideration to an alien's claim of religious persecution where it failed to discuss "highly relevant" evidence showing that the Pakistani government interfered with places of worship, religious texts, pilgrimages, preaching, and voting by members of the alien's religion, and ignored the alien's testimony that he had kept his religion secret and it was difficult to practice his faith. Id. at 1335-36.

Here, the agency gave reasoned consideration to Adame-Rodriguez's evidence. To begin with, the IJ detailed the evidence concerning past persecution, including Adame-Rodriguez's testimony that his cousin Olman generally had told him that he was working undercover to expose police corruption involving several officers; that Adame-Rodriguez regularly socialized with Olman and three of his police-officer friends; that Adame-Rodriguez was with Olman before Olman was

7

murdered, the same day 25 to 30 guests were expected to arrive for a family picnic; that Adame-Rodriguez was chased after the murder through a cornfield by the four armed men he thought killed Olman (three of whom Adame-Rodriguez recognized as Olman's police-officer friends), but Adame-Rodriguez did not see the murder; that Adame-Rodriguez's aunt had been abducted by unknown captors; and that the aunt had contacted his family to warn that she would be killed if Adame-Rodriguez did not turn himself in. Similarly, the BIA discussed Adame-Rodriguez's flight and his aunt's abduction, noting in particular that Adame-Rodriguez was not physically harmed, could not say whether his pursuers had fired their weapons toward him, and did not know the identity of aunt's captors. Overall, the IJ's and BIA's past-persecution analysis gave an accurate and adequate discussion of the evidence and did not omit any significant and relevant details. Cf. Ali, 931 F.3d at 1335-37.

The agency also gave reasoned consideration to whether Adame-Rodriguez was targeted on account of an actual or imputed political opinion. In addition to the evidence we've already recounted, the IJ emphasized that Adame-Rodriguez had no personal involvement with anti-corruption work, lacked knowledge of the details of Olman's work, and never had filed a report against the government concerning instances of corruption. Not only did this discussion lead the IJ to determine that Adame-Rodriguez did not actually hold an anti-corruption political opinion, it bore upon whether Adame-Rodriguez's assailants would have imputed a political opinion

to him.   Similarly, the BIA observed that Adame-Rodriguez had never been employed by the Colombian government or police, was not politically active in Colombia, did not know the details of his cousin's undercover anti-corruption work, and had not made any reports to the Colombian government that could have made Olman's attackers aware of Adame-Rodriguez's opinions.  This discussion of the evidence was more than sufficient to demonstrate that it had considered whether he was persecuted on account of an actual or imputed political opinion.  Thus, we deny Adame-Rodriguez's petition as to his withholding-of-removal claim.

Finally, we find no merit to Adame-Rodriguez's argument that substantial evidence did not support the BIA's denial of CAT relief nor that the BIA had properly upheld the IJ's decision to give little weight to his expert witness's opinion.  "In order to qualify for relief under the CAT, the applicant must show that it is more likely than not that he would be tortured by or with the acquiescence of a public official in his home country."  Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 406 (11th Cir. 2016); 8 C.F.R. § 1208.16(c).  The IJ or BIA may consider, among other things, episodes of past torture, the applicant's ability to relocate to a place within his country where he is not likely to be tortured, widespread human rights abuses within the proposed country of removal, and other relevant country conditions evidence.  8 C.F.R. § 1208.16(c)(3).

The regulations define torture as:

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Id. § 1208.18(a)(1). In order for an act to be considered torture, it must be directed against a person in the offender's custody or physical control. Id. § 1208.18(a)(6). Where an alien's claim for CAT relief is based upon the same set of facts as his claim for withholding of removal and the IJ or BIA has already discussed those set of facts in detail in the withholding of removal context, it is not necessary to discuss that evidence in detail again in the CAT context. Malu v. U.S. Att'y Gen., 764 F.3d 1282, 1292-93 (11th Cir. 2014).

The IJ has broad discretion in admitting and considering evidence. 8 C.F.R. § 1003.10(b); Matter of D-R-, 25 I. & N. Dec. 445, 458 (BIA 2011). The BIA has said that "an [IJ] who finds an expert witness qualified to testify may give different weight to the testimony, depending on the extent of the expert's qualifications or based on other issues regarding the relevance, reliability, and overall probative value of the testimony as to the specific facts in issue in the case." Matter of D-R-, 25 I. & N. Dec. at 464 n.13. Moreover, an IJ may "rely heavily" on State Department reports, but these reports are "reliable only to the extent they comment upon or are

relevant to the highly specific question[s] raised by an alien." Gaksakuman v. U.S. Att'y Gen., 767 F.3d 1164, 1171 (11th Cir. 2014) (quotations omitted). It is inappropriate for an IJ to rely on a State Department report selectively. Tang v. U.S. Att'y Gen., 578 F.3d 1270, 1280 (11th Cir. 2009).

Here, substantial evidence supports the BIA's decision that Adame-Rodriguez had not shown it was more likely than not that he would be tortured upon returning to Colombia. Although Adame-Rodriguez was chased by Olman's killers and his aunt was abducted, these incidents did not meet the definition of torture because they did not involve the severe infliction of mental or physical pain and suffering. 8 C.F.R. § 1208.18(a)(1). Notably, the record does not suggest that Adame-Rodriguez was physically injured in connection with either incident, nor that the mental distress he suffered was deliberately inflicted upon him by Olman's killers. Id. Further, because Adame-Rodriguez successfully fled from Olman's killers, he was never within their custody or physical control. Id. § 1208.18(a)(6).

The IJ and BIA also properly considered the ability of Adame-Rodriguez to safely relocate within Colombia and the country conditions evidence. Id. § 1208.16(c)(3). The evidence showed that neither Adame-Rodriguez nor his family had been contacted by Olman's killers or any other individuals in relation to that incident since August 2013, and his mother remained safely in the country. Nor do the letters sent to Adame-Rodriguez by his cousins say that they were being

11

threatened in connection with Olman's murder. And, in any event, the IJ and BIA were not required to discuss the evidence surrounding Adame-Rodriguez's ability to relocate in detail as to Adame-Rodriguez's CAT claim because the IJ and BIA adequately addressed that evidence in the withholding-of-removal context. See Malu, 764 F.3d at 1292-93.

As for the country conditions evidence, the IJ and BIA properly noted that, while it described police corruption and human rights abuses within Colombia, it did not establish a likelihood of torture. The evidence showed that corruption and impunity among the country's police force were ongoing issues, but did not speak directly to whether police informants or individuals suspected of engaging in anti-corruption work were targeted for torture. Gaksakuman, 767 F.3d at 1171. It also indicated that by 2016, the Colombian government had made moderate efforts to combat abuses within the security forces and protect witnesses.

In addition, the BIA gave reasoned consideration to Adame-Rodriguez's arguments concerning the IJ's weighing of the testimony of his expert witness, Professor Marc Chernick. As the record shows, the IJ correctly noted that Professor Chernick did not explain how he reached his opinion that Adame-Rodriguez faced a 60%-70% chance of torture upon returning to Colombia, which the IJ could have properly found to have weakened the probity of that testimony. Matter of D-R-, 25 I. & N. Dec. at 464 n.13. To the extent the IJ did not discuss Professor Chernick's

affidavit, nothing in the affidavit undermined the ample evidence indicating, as we've already discussed, that Adame-Rodriguez did not sufficiently establish a fear of future torture.  Further, the BIA's assessment of the IJ's treatment of Professor Chernick's opinion properly reflected the discretion that IJs enjoy over evidentiary matters in removal proceedings.  8 C.F.R. § 1003.10(b); Matter of D-R-, 25 I. & N. Dec. at 458.  Indeed, when the BIA concluded that it was upholding the IJ's discretionary decision, it referenced the IJ's consideration of the reliability and overall probative value of that testimony as it was applied to the specific facts of the case, and adequately addressed the other evidence supporting Adame-Rodriguez's application for CAT relief.  Ali, 931 F.3d at 1333; Tan, 446 F.3d at 1374.  Accordingly, on this record, we deny Adame-Rodriguez's petition for review.

**PETITION DENIED.**